**IN THE UNITED STATES COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRENDEN MOORE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>USPLabs, LLC and AllStarHealth.com,<br><br>Defendants. | **CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, on behalf of himself, all others similarly situated, and the general public, by and through his undersigned counsel, hereby brings this action against defendants USPLabs, LLC and AllStarHealth.com, and alleges the following upon his own knowledge, or where he lacks personal knowledge, upon information and belief including the investigation of his counsel.

## NATURE OF ACTION

1.   Defendant USPLabs, LLC ("USPLabs") manufactures and markets the product PowerFULL, a supplement that purports to increase human growth hormone secretion, promote better sleep, and provide a panoply of health benefits.

2.   Defendant AllStarHealth.com ("AllStarHealth") is an online retailer that independently markets and sells PowerFULL. AllStarHealth makes its own claims regarding PowerFULL, independent from USPLabs.

3.   Both defendants make claims regarding PowerFULL that are false and misleading in that PowerFULL does not provide any of the health benefits touted by defendants.

4.   USPLabs also misleads consumers by use of the name "USP," the well-known acronym for United States Pharmacopeia (USP). USP is a nonprofit scientific organization founded in 1820 in Washington, D.C., whose participants, working under strict conflict-of-interest rules, and using careful scientific method and consensus, set enforceable standards

for the quality of drugs, and voluntary standards for the quality of vitamins and dietary supplements. Known as Reference Standards, these are updated and annually published jointly by USP and the National Formulary in a compendia known as USP-NF.

5.     Plaintiff brings this class action to remedy the defendants' collective misrepresentations and false and misleading advertising with respect to PowerFULL.

## THE PARTIES

6.     Plaintiff Brenden Moore is a resident of Dutchess County, New York.

7.     USPLabs, LLC is a Dallas County, Texas based company that manufactures a variety of health products and supplements. It sells its products through a variety of brick-and-mortar and online retailers, including AllStarHealth.

8.     AllStarHealth is an Orange County, California based company. It is an online retailer of a variety of health products and supplements, including USPLabs' PowerFULL supplement. Plaintiff purchased PowerFULL through AllStarHealth.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs, and at least one member of the class of plaintiffs is a citizen of a State different from USPLabs and AllStarHealth. In addition, more than two-thirds of the members of the class reside in states other than the state in which defendants are citizens and in which this case is filed, and therefore any exceptions to jurisdiction under 28 U.S.C. § 1332(d) do not apply.

10.     The Court has personal jurisdiction over both defendants because both defendants advertised, marketed, distributed, offered for sale, and sold to consumers in New York and the United States, transacted business in New York, including without limitation through online marketing intended to reach consumers in New York. Moreover, defendants both had sufficient purposeful, systematic, and continuous minimum contacts with the various states of the United States, including New York, and sufficiently availed themselves

of the markets of various states of the United States, including New York, to render the exercise of personal jurisdiction by this Court permissible.

11.     Venue is proper in this judicial district because a substantial portion of the acts forming the basis for the claims occurred in this district, and because both defendants transact substantial business generally in this district.

## FACTS

12.     USPLabs sells PowerFULL through multiple retailers, including online through AllStarHealth.

13.     USPLabs markets PowerFULL as an "award winning" and "perfect" supplement for "both male and female athletes," and a "growth hormone & sleep support supplement" for "strength training, bodybuilding, power lifting, strong man training, and crossfit." The product is advertised on its packaging as the "world's strongest natural growth hormone releaser" that will "increase Natural Human Growth Hormone production by 221% after just ONE dose."

14.     AllStarHealth markets PowerFULL as a "premium natural growth hormone enhancing supplement with select ingredients backed by scientific research."  AllStarHealth claims that the two active ingredients in PowerFULL were "shown in independent studies to raise endogenous growth hormone levels in men within 60 minutes after consumption." And further that this "makes PowerFULL a great supplement to take prior to training, giving all natural athletes the advantage of increased growth hormone production." Finally, AllStarHealth claims that "PowerFULL is a great addition to all bodybuilding protocols calling for increased gains in lean muscle mass and a reduction in body fat."

15.     The advertising, marketing, and sale of PowerFULL and the use of the name "USP" in USPLabs was and is false and misleading for the reasons set forth below.

## I.     USPLABS INTENTIONALY AND MATERIALLY MISLEADS CONSUMERS WITH ITS NAME

16.     The United States Pharmacopeia utilizes the acronym USP. The USP is a nonprofit scientific organization whose participants set standards for dietary supplements that are enforceable by the United States Food and Drug Administration.

17.     The use of USP in the name USPLabs is an obvious reference to the scientific organization.

18.     However, USPLabs is *not* affiliated in any way with the scientific organization USP. Although USPLabs disclaims a relationship with the real USP, it only does so in small-type, greyed out font at the very bottom of its webpage and only amidst a series of other, technical disclaimers.

19.     USPLabs intentionally created this confusion and capitalized on it.

20.     Because of its name, plaintiff and other reasonable consumers were misled by USPLabs and reasonably believed that USPLabs products are affiliated, or are at least endorsed, by USP.

**II.     THE CLINICAL STUDIES**

21.     Both defendants ostensibly rely on two supposed clinical studies to support their claims regarding PowerFULL. However, these studies were flawed and, more importantly, did not reach nearly the conclusions that defendants claim they do.

22.     On the USPLabs website, multiple claims regarding health benefits are marked with footnotes, which refer to two studies, one regarding human growth hormone secretion and one regarding sleep quality.

23.     Both studies were "single arm," meaning all participants were treated the exact same way, i.e., no placebo or other control groups by which to compare results. Also, both studies were commissioned and paid for, in part, by USPLabs.

24.     As discussed in detail below, both studies' methodologies were flawed, the authors hedged the very narrow conclusions they drew, and both defendants greatly exaggerated even those hedged findings.

### A.       The Growth Hormone Secretion Study[1]

25.       Defendants market PowerFULL as a "perfect" growth hormone supplement and a "premium natural growth hormone enhancing supplement" that is "backed by scientific research."

26.       While the authors of this study concluded that growth hormone may have increased over a short time following ingestion of PowerFULL, there was a "great deal of subject variability" and that they really could not draw any favorable conclusions from the data. For instance, the authors state:

a.       "We cannot be certain of [the efficacy] due to our lack of a placebo control."

b.       "While it appears as though GH was on the decline at the 120 minute collection time (Fig. 1), we cannot confidently comment on the response beyond this two hour period."

c.       "We cannot conclude on the long-term health and performance effects that this transient increase in GH might provide."

d.       "We acknowledge that well-controlled investigations are needed to determine the chronic effect of this supplement on health and performance related parameters."

e.       "We used healthy, young men exclusively as subjects in the present investigation. Hence, results should not be generalized to those with known disease, older individuals, or women, as these individuals may not respond in the same manner as our subjects did."

f.       "Additional studies are needed to determine if the chronic use of this supplement, or others like it, would result in meaningful changes in health related parameters associated with increased circulating GH."

---

[1] Alleman RJJ, Canale RE, McCarthy CG, Bloomer RJ. "A blend of *Chlorophytum Borivilianum* and Velvet bean increases serum growth hormone in exercise-trained men", Nutr Metab Insights. 2011;4:55–6.

g.    "Currently there exist no reports pertaining to the efficacy of *chlorophytum borivilianum* [sic] or velvet bean directly stimulating GH in animals or humans."

27.    Contrary to defendants' advertising, marketing, and labeling, the study, on which the defendants relied, concluded almost nothing and certainly hedged its narrow conclusions by insisting that further investigation and utilizing more appropriate study controls would be necessary before any claims regarding efficacy could be made.

**B.    The Sleep Quality Study[2]**

28.    Defendants market PowerFULL as the "perfect" sleep support supplement and that users will "Get more out of each hour of sleep - improve quality and feel better on less sleep."

29.    In making sleep quality related claims, defendants relied on a study similar to the study commissioned on growth hormone secretion.

30.    Again, though, the authors of the study were very careful to narrowly draw conclusions. Regarding the methodology of the study, the authors noted that they only "somewhat helped to avoid a 'placebo' effect, which is well documented in the biomedical literature." The authors pointed out that an "admitted limitation of the present design is our lack of a placebo condition. Simply suggesting to subjects that a supplement may have hypnotic/sleep-inducing qualities may translate into improved sleep quality."

31.    In fact, the authors discounted their own, limited, conclusions regarding efficacy and noted that "[w]hile these findings may be of interest, additional placebo-controlled studies are needed to corroborate these data, possibly including a larger sample size, increased length of treatment with the supplement, and additional time points of measurement."

---

[2] McCarthy CG, Alleman RJJ, Bell ZW, and Bloomer RJ, "A Dietary Supplement Containing *Chlorophytum Borivilianum* and Velvet Bean Improves Sleep Quality in Men and Women", Integr Med Insights. 2012; 7: 7–14.

###### C.    The Defendants Cannot Reasonably Rely on these Studies in Making Their Outrageous Efficacy Claims

32.    First, the studies utilized flawed methodology. Simply telling participants they might be getting a placebo, but not actually implementing a placebo, was error. This was acknowledged by the study authors themselves. Moreover, the scientific community is very critical of the exact study at issue here and was described by one scientific journal as "a clumsy, inadequate attempt to minimize any placebo effect" especially because "they didn't even think to ask subjects afterwards whether they thought they'd received a placebo." Indeed, it appears that the USPLabs studies were published as they were "because their research is poor quality and they know it would be rejected by other journals."[3]

33.    Even read in the most positive light, the studies do not come anywhere near supporting the assertion that PowerFULL is the "world's strongest natural growth hormone releaser."

34.    Finally, there is nothing in either study even suggesting, let alone concluding, that PowerFULL will or even can "increase Natural Human Growth Hormone production by 221% after just ONE dose."

35.    Because these were, essentially, sham studies and because they do not support the claims made by defendants, even the reference to clinical studies and "scientific evidence" in the defendants' marketing is false and misleading.

### III.    THE DOSAGE IN THE CAPSULES DO NOT HAVE THE CAPABILITY OF PRODUCING THE EFFECTS MARKETED BY DEFENDANTS

36.    PowerFULL contains two ingredients: Velvet bean and *Chlorophytum borivillanum.* Neither of these products have shown efficacy in providing the health benefits touted by defendants at the amounts contained in the "proprietary blend."

37.    Another critical flaw of the studies commissioned by USPLabs is that the proprietary formula was tested – not the components individually. There is no way to tell how

---

[3] http://www.sciencebasedmedicine.org/why-do-they-do-studies-like-this/

much of each ingredient is in a dosage. However, even if the capsule, taken 3 times, contained all of one product or the other, it would not be efficacious in providing the health benefits promoted by the defendants.

38.     Velvet bean, or *Mucuna pruriens*, is a tropical legume native to Africa and Asia. Velvet bean contains a very small amount of L-dopa, the only pharmacological property of that legume. Because of the presence of L-dopa, the velvet bean has been used in traditional medicines.

39.     However, the *Mucuna pruriens'* mature seeds contain only about 3.1%-6.1% L-dopa and its leaves contain about 0.5% L-dopa. Therefore, even if the entire capsule of PowerFULL is velvet bean (750mg), it will, at most, contain around 45mg of L-dopa. The maximum daily dosage of PowerFULL yields 135mg, at the very most, of L-dopa.

40.     Various studies have shown little or diminished effect on serum growth hormone at dosages of L-dopa below 500mg. For example, one study reported barely any significant serum growth hormone effect at dosages of 250mg L-dopa.[4]

41.     At such small levels, PowerFULL cannot possibly contain sufficient L-dopa from *Mucuna pruriens* to stimulate growth hormone production and, therefore, provide any health benefits.

42.     The other ingredient, *Chlorophytum borivilianum* (also known as "*C. borivilianum*"), is an herb from India. It is cultivated and eaten as a leaf vegetable in some parts of India, and its roots are traditionally used as a tonic to treat sexual disorders, partly due to reported aphrodisiac qualities. The medicinal value is thought to derive from its saponin content. In fact, some clinical progress has been made in establishing *C. borivilianum*

---

[4] R.L. Eddy, A.L. Jones, H. Chakmakjian, and M.C. Silverthorne, *Effects of Levodopa (L-Dopa) on Human Hypophyseal Trophic Hormone Release*, J. Clin. Endrocrinol. Metab. 33(4):709-12 (Oct. 1971).

as a treatment for sexual dysfunction.[5] What is not established, is that saponin (or *C. borivilianum* generally) has any effect on human growth hormone secretion or as a sleep aid (notably, the study regarding its use on sexual dysfunction noted that it does not have any effects on mood or sleep).

43.     Therefore, neither of the only two ingredients, in any varying amount of ingredient per dose of PowerFULL can yield any results regarding growth hormone production or sleep quality improvement.

### PLAINTIFF'S RELIANCE & INJURIES

44.     Plaintiff purchased USPLabs PowerFULL from AllStarHealth relying on both defendants' claims regarding efficacy and because of the USP part of the USPLabs name. Defendants' representations were and are false and misleading, and have the capacity, tendency, and likelihood to confuse or confound plaintiff and other consumers acting reasonably.

45.     Plaintiff paid more for the products than he otherwise would have absent these statements, and would not have been willing to pay the prices he did, or to purchase them at all, absent the misrepresentations.

46.     Because PowerFULL does not provide the panoply of health benefits promised, its true value was $0, and plaintiff and other PowerFULL purchasers were injured at least in the amounts of their purchases.

47.     By using false and misleading claims, defendants were able to command a market price for PowerFULL significantly above a fair market price, and above what its price would have been absent defendants' use of the false and misleading statements.

48.     Plaintiff sustained legally cognizable injury in the form of lost money as a result of PowerFULL's misbranding, which also was in the nature of an omission, *i.e.*, defendants'

---

[5] Steels E, Rao A, and Vitetta L, "Physiological aspects of male libido enhanced by standardized Trigonella foenum-graecum extract and mineral formulation", Phytother Res. 2011 Sep;25(9):1294-300. doi: 10.1002/ptr.3360. Epub 2011 Feb 10.

failure to disclose that PowerFULL does not perform as promised, does not contain sufficient pharmacological properties to elicit GH secretion or promote better sleep, and that the studies relied upon and used in the marketing were shams.

## CLASS ACTION ALLEGATIONS

49.     Pursuant to Federal Rule of Civil Procedure 23, plaintiff seeks to represent a class of all persons in the United States who purchased one or more of the PowerFULL products for personal, family, or household use, and not for resale.

50.     Pursuant to Federal Rule of Civil Procedure 23, plaintiff further seeks to represent a subclass of all persons in New York who purchased one or more of PowerFULL for personal, family, or household use, and not for resale.

51.     The members in the proposed class and subclass are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all class members in a single action will provide substantial benefits to the parties and Court.

52.     Questions of law and fact common to plaintiff and the class include, but are not limited to the following:

a.     Whether PowerFULL actually stimulates growth hormone production;

b.     Whether PowerFULL actually improves sleep quality;

c.     If PowerFULL does not stimulate growth hormone production, whether either or both defendants knew;

d.     If PowerFULL does not improve sleep quality, whether either or both defendants knew;

e.     Whether defendants' marketing and advertising of PowerFULL constitutes false advertising;

f.     Whether the studies relied upon by defendants were methodologically flawed such that no reasonable manufacturer or retailer would rely upon them;

g.     Whether the studies relied upon by defendants adequately establish the claims used by defendants in marketing PowerFULL;

h.   Whether defendant's marketing of PowerFULL has or had the capacity, tendency, or likelihood of confusing or confounding ordinary consumers acting reasonably;

i.   Whether PowerFULL has any efficacy as a growth hormone supplement as advertised;

j.   Whether PowerFULL has any efficacy as a sleep aid as advertised;

k.   Whether USPLabs intentionally utilized the acronym USP to intentionally confuse or mislead consumers into believing they were operated by or affiliated with the real USP;

l.   Whether the name USPLabs has or had the capacity, tendency, or likelihood of confusing or misleading reasonable consumers;

m.   Whether defendants marketed and sold PowerFULL knowing that its representations were likely to confuse, mislead, and/or deceive reasonable consumers;

n.   The proper equitable and injunctive relief;

o.   The proper amount of actual or compensatory damages;

p.   The proper amount of restitution or disgorgement;

q.   The proper amount of punitive damages; and

r.   The proper amount of reasonable litigation expenses and attorneys' fees.

53.   Plaintiff's claims are typical of class members' claims in that they are based on the same underlying facts, events, and circumstances relating to defendants' conduct.

54.   Plaintiff will fairly and adequately represent and protect the interests of the class, has no interests incompatible with the interests of the class, and has retained counsel competent and experienced in class action litigation.

55.   Class treatment is superior to other options for resolution of the controversy because the relief sought for each class member is small such that, absent representative litigation, it would be infeasible for class members to redress the wrongs done to them.

56.     Questions of law and fact common to the class predominate over any questions affecting only individual class members.

57.     As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

## FIRST CAUSE OF ACTION

## UNFAIR AND DECEPTIVE BUSINESS PRACTICES, N.Y. GEN. BUS. L. § 349

### (By the New York Subclass)

58.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

59.     Defendants' conduct constitutes deceptive acts or practices or false advertising in the conduct of business, trade or commerce or on the furnishing of services in New York which affects the public interest under N.Y. Gen. Bus. L. § 349.

60.     As alleged herein, by advertising, marketing, and distributing PowerFULL to plaintiff and other class members with false or misleading claims and representations, defendants engaged in, and continues to engage in, deceptive acts and practices.

61.     Defendants' conduct was materially misleading to plaintiff and the class.

62.     During the class period, defendants carried out a plan, scheme and course of conduct which was consumer oriented.

63.     As a direct and proximate result of defendants' violation of N.Y. Gen. Bus. L. § 349, plaintiff and the class were injured and suffered damages.

64.     The injuries to plaintiff and the class were foreseeable to defendants and therefore defendants' actions were unconscionable and unreasonable.

65.     Defendants are liable for damages sustained by plaintiff and the class to the maximum extent allowable under N.Y. Gen. Bus. L. § 349.

66.     Pursuant to N.Y. Gen. Bus. L. § 349(h), plaintiff and the class seek an Order enjoining defendants from continuing to engage in unlawful acts or practices, false advertising, and any other acts prohibited by law, including those set forth in this Complaint.

## SECOND CAUSE OF ACTION

### FALSE ADVERTISING, N.Y. GEN. BUS. L. § 350

### (By the New York Sub-Class)

67.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint.

68.     Defendants have engaged and are engaging in consumer-oriented conduct which is deceptive or misleading in a material way, constituting false advertising in the conduct of any business, trade, or commerce, in violation of N.Y. Gen. Bus. L. § 350.

69.     As a result of defendants' false advertising, plaintiff and the class have suffered and continue to suffer substantial injury, including damages, which would not have occurred but for the false and deceptive advertising, and which will continue to occur unless defendants are permanently enjoined by this Court.

## THIRD CAUSE OF ACTION

### VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW,

### CAL. BUS. & PROF. CODE §§ 17500 *ET SEQ.*

### (By the Nationwide Class Against AllStarHealth)

70.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

71.     The False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading," Cal. Bus. & Prof. Code § 17500.

72.     Defendants' claims are untrue or misleading in that PowerFULL does not provide any of the health benefits claimed by defendants.

73.     Defendants knew, or reasonably should have known, that their claims regarding PowerFULL were untrue or misleading.

74.     Plaintiff and the class are entitled to injunctive and equitable relief, and restitution in the amount they spent on PowerFULL.

## FOURTH CAUSE OF ACTION

## VIOLATIONS OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750 *ET SEQ.*

### (By the Nationwide Class Against AllStarHealth)

75.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

76.     Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices and violated Cal Civ Code 1770(a) in at least the following subsections:

(2) Misrepresenting the source, sponsorship, approval, or certification of goods or services;

(3) Misrepresenting the affiliation, connection, or association with, or certification by, another;

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have;

(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(9) Advertising goods or services with intent not to sell them as advertised;

## FIFTH CAUSE OF ACTION

## VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.

### (By the Nationwide Class Against AllStarHealth)

77.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

78.     The California Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice," Cal. Bus. & Prof. Code § 17200.

**Fraudulent**

79.     As set forth herein, the defendants' statements relating to PowerFULL are likely to deceive reasonable consumers and the public.

**Unfair**

80.     Defendants' conduct with respect to the labeling, advertising, and sale of PowerFULL was unfair because defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

81.     Defendants' conduct with respect to advertising and sale of PowerFULL was also unfair because it violated public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the False Advertising Law, portions of the Federal Food, Drug, and Cosmetic Act, portions of the Dietary Supplement Health and Education Act of 1994, and portions of the California Sherman Food, Drug, and Cosmetic Law.

82.     Defendants' conduct with respect to the advertising and sale of PowerFULL was also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

**Unlawful**

83.     The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

- The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2103 *et seq.*;

- The Lanham Act, 15 U.S.C. §§ 1501 *et seq.*;

- The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*

- The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;

- The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*; and

- The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 *et seq.*

*              *              *

84.     In accordance with Cal. Bus. & Prof. Code § 17203, plaintiff seeks an Order enjoining defendants from continuing to conduct business through unlawful, unfair, or fraudulent acts and practices, and to commence a corrective advertising campaign.

85.     On behalf of himself and the class, plaintiff also seeks an Order for the restitution of all monies from the sale of PowerFULL, which were unjustly acquired by defendants through acts of unlawful, unfair, or fraudulent competition.

### SIXTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

### (By the Nationwide Class)

86.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

87.     Defendants misrepresented to plaintiff and the class the characteristics and benefits of PowerFULL, and omitted material facts concerning the true nature of the product.

88.     Defendants owed a duty to plaintiff and the class to exercise reasonable care when issuing statements or disclosures regarding PowerFULL's characteristics and benefits.

89.     Defendants' statements and disclosures regarding the characteristics and benefits of PowerFULL were likely to deceive plaintiff and the class.

90.     Defendants' omissions of material information were likely to deceive plaintiff and the class in that, had Defendants not omitted such material information, the disclosure of that information would have resulted in plaintiff and the class acting differently, for example, not purchasing PowerFULL.

91.     Defendants' claims have influenced or are likely to influence future decisions of consumers and the buying public. Plaintiff and the class, by purchasing PowerFULL, reasonably acted in reliance on the truth of defendants' representations, and the absence of the material information that defendants deceptively omitted.

92.     As a direct and proximate result of plaintiff's and the class' reliance upon the representations made by defendants, plaintiff and the class have sustained damages and ascertainable loss.

## SEVENTH CAUSE OF ACTION

## INTENTIONAL MISREPRESENTATION

### (By the Nationwide Class)

93.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

94.     Defendants represented to the public, including to plaintiff and the class, that PowerFULL provided a scientifically-based advantage over similar supplements, in that it is a "perfect" supplement for growth hormone and sleep aid and that, moreover, their claims were backed by scientific evidence and research.

95.     Defendants' representations were false and misleading.

96.     At the time Defendants made statements or representations regarding the nature and qualities of PowerFULL, Defendants knew that the statements and representations were false and misleading.

97.     Defendants made the misrepresentations alleged herein with the intention of inducing and persuading plaintiff and the class to purchase PowerFULL.

98.     Defendants further withheld and omitted material information about PowerFULL with the intention of inducing and persuading plaintiff and the class to purchase the products.

99.     Plaintiff and the class, in purchasing PowerFULL, reasonably relied on Defendants' false and misleading statements and misrepresentations, and on the absence of the material information that defendants deceptively omitted.

100.    As a direct and proximate result of defendants' intentional misrepresentations and deceptive omissions, plaintiff and the class were induced to pay, and pay a premium for, PowerFULL.

101.    Plaintiff and the class were damaged through their purchase and use of PowerFULL.

102.    Plaintiff's and the class' reliance on defendants' statements and representations of the nature and characteristics of PowerFULL was reasonable.

103.    As a result, defendants are guilty of malice, oppression, and fraud, and plaintiff and the class are therefore entitled to recover exemplary or punitive damages.

## EIGHTH CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY

### (By the Nationwide Class)

104.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

105.    In selling PowerFULL to plaintiff and the class members, defendants made an affirmation of fact or promise that the products, as a "perfect" supplement for growth hormone and sleep support, provide a panoply of health benefits as well as related affirmations of fact, promises, and descriptions, which formed part of the basis of the bargain. Defendants thus expressly warranted the goods sold.

106.    Defendants also made an affirmation of fact or promise that PowerFULL was and is proven by scientific evidence and research.

107.    PowerFULL does not live up to these affirmations of fact, promises, and descriptions, causing the breach of warranty when plaintiff and other consumers purchased them.

108.    Plaintiff, on behalf of themselves and the class, seek actual damages for defendants's breach of warranty.

## NINTH CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (By the Nationwide Class)

109.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

110.    In selling PowerFULL to plaintiff and the class, Defendants impliedly warranted that the goods sold were merchantable, but PowerFULL does not provide the health benefits promised by defendants.

111.   Plaintiff and the class suffered injury as a result of defendants' breach in that they paid money for a product that does not provide the benefits advertised.

112.   Plaintiff and the class, seek actual damages for defendants' breach of warranty.

## TENTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF FITNESS

### (By the Nationwide Class)

113.   Plaintiff realleges and incorporate the allegations elsewhere in the Complaint as if fully set forth herein.

114.   In selling PowerFULL to plaintiff and the class, defendants impliedly warranted that the goods sold were fit for their particular purpose described in this Complaint. Moreover, in selling PowerFULL to plaintiff and the class, defendants impliedly warranted that PowerFULL was fit for its particular use, e.g., providing the "perfect" supplement for growth hormone and sleep support.

115.   Defendants breached the warranty in that PowerFULL does not provide the benefits advertised.

116.   Plaintiff and the class suffered injury as a result of defendants' breach in that they paid money for a product that did not adequately perform as impliedly warranted.

117.   Plaintiff and the class, seek actual damages for defendants' breach of implied warranty of fitness.

## ELEVENTH CAUSE OF ACTION

## UNJUST ENRICHMENT

### (By the Nationwide Class)

118.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

119.   By means of its material misconduct as set forth herein, defendants induced plaintiff and the class to purchase PowerFULL at a premium to its actual value.

120.    As a consequence of this misconduct, plaintiff and the class spent money they would not otherwise have been willing to spend absent the misrepresentations and misconduct by defendants.

121.    By virtue of the foregoing, defendants have been unjustly enriched in an amount to be determined with respect to plaintiff and the class, to the extent that defendants received and kept revenues collected from the sale of PowerFULL, which defendants would not have received absent its misconduct.

## TWELFTH CAUSE OF ACTION
### RESTITUTION
### (By the Nationwide Class)

122.    Plaintiff realleges and incorporate the allegations elsewhere in the Complaint as if fully set forth herein.

123.    By virtue of deceptive and unlawful business practices, defendants charged and received payment for PowerFULL. Defendants should not be permitted to retain those payments in equity and good conscience, as those payments were obtained in contravention of the law. To permit defendants to retain those payments would wrongfully confer a benefit upon defendants at the expense of plaintiff and the class.

124.    Under the circumstances, it would be inequitable for defendants to retain these ill-gotten benefits, and therefore restitution to plaintiff and the class is warranted.

## PRAYER FOR RELIEF

125.    Wherefore, plaintiff, on behalf of himself, all others similarly situated and the general public, pray for judgment against defendants as to each and every cause of action, including:

A.    An Order declaring this action to be a proper class action, appointing plaintiff and his counsel to represent the class, and requiring defendants to bear the costs of class notice;

B.    An order enjoining defendants from selling PowerFULL in a false or misleading manner or in any manner that violates federal and state regulations;

C.   An Order requiring defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing product;

D.   An Order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy defendants' past conduct;

E.   An Order requiring defendants to pay to the nationwide class restitution, including the New York subclass members to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of New York law plus pre-and post-judgment interest thereon;

F.   An Order requiring defendants to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

G.   An Order requiring defendants to pay all actual and statutory damages permitted under the causes of action alleged herein;

H.   An Order requiring defendants to pay punitive damages on any causes of action so allowable if plaintiff proves defendants' conduct was knowing, willful, malicious, oppressive, or reckless;

I.   An Order awarding attorneys' fees and costs to plaintiff and the class; and

J.   An Order providing for all other such equitable relief as may be just and proper.

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: March 23, 2015        /s/ *Thomas A. Canova*
                             By: Thomas A. Canova
                             **THE LAW OFFICE OF JACK FITZGERALD, PC**
                             JACK FITZGERALD (SBN 4294401)
                             *jack@jackfitzgeraldlaw.com*

THOMAS A. CANOVA (SBN 2108119)
*tom@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**Attorneys for Plaintiff and the Proposed Class**